***********
The Full Commission has reviewed the evidence of record in light of the decision of the North Carolina Court of Appeals in this matter filed 19 March 2002. Having reconsidered the entire record of evidence, specifically weighing and pondering the medical evidence and testimony of Drs. Hardy, Koontz, Crisp, Harvell, Fulghum, Kittleberger, and Lane, the Full Commission enters the following Opinion and Award. The Commission considered this matter subsequent to the remand without hearing additional oral arguments pursuant to North Carolina Workers' Compensation Rule 701(8).
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, at the hearing on 14 July 1998 and subsequent thereto as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 3 October 1997, an employment relationship existed between the plaintiff-employee and defendant-employer.
3. On 3 October 1997, defendant-employer was self-insured with Kemper Risk Management Services as the servicing agent.
4. The plaintiff's average weekly wage on 3 October 1997 was $740.56, subject to verification by an Industrial Commission Form 22, admitted into evidence as Stipulated Exhibit #2.
5. The plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit #3. These include the following:
a) Dr. James Koontz;
b) Dr. Laddie Crisp;
c) Lenoir Memorial Hospital;
d) Eastern Radiologist, Inc.;
e) Dr. James Fulghum;
f) Dr. Ira Hardy;
g) Dr. Gregg Hardy;
h) Dr. James Harvell; and
i) Rehabilitation Management, Inc.
6. All parties have been correctly named and there is no question as to misjoinder or nonjoinder of parties.
7. Correspondence from Aetna Healthcare is admitted into evidence as Stipulated Exhibit #4.
8. The issues to be determined are: (1) whether the plaintiff sustained a compensable injury arising out of and in the course of his employment with defendant; and (2) if so, to what, if any, benefits is he entitled; (3) the plaintiff has also requested attorney fees.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 3 October 1997, the plaintiff reported to defendant-employer's place of work at approximately 8:15 a.m. He had arrived at that time for a meeting in Mr. Gary Scholar's office at approximately 8:30 a.m. Mr. Scholar was a supervisor for defendant-employer. The purpose of this meeting concerned the plaintiff's future employment with defendant-employer.
2. Mr. Scholar's office was located on the second floor of the plant, at the 31-foot level. The meeting ended at approximately 10:00 a.m. Thereafter, the plaintiff left Mr. Scholar's office, went down one flight of stairs, to the 21-foot level and smoked a cigarette in the smoking area, with Mr. Scholar present.
3. While smoking his cigarette, the plaintiff was paged, and indicated to Mr. Scholar that he was going to the maintenance shop to answer the page he had received.
4. The plaintiff then left the smoking area and went to the maintenance shop to use the phone. After completing his call, the plaintiff proceeded down the stairs to his office which was located on the 0 foot level.
5. While proceeding down the stairs, the plaintiff slipped. As he began to slip, the plaintiff was holding onto the railing of the stairs with his right hand and one of his legs went out from underneath him. The plaintiff twisted and almost fell to the ground, but did not. As he twisted, the plaintiff grabbed the railing with his left hand, in an attempt to catch himself. There was some worn treads located on the stairs, and some "fluff" which appeared to be some scrap or waste material from defendant-employer's industrial activities.
6. As the plaintiff was slipping and twisting, he experienced immediate onset of sharp pain in his lower back, which radiated down into his right thigh, as well as experiencing pain in his right groin. The plaintiff later developed pain and weakness in his right knee.
7. Immediately after the incident, the plaintiff sat on the stairs to collect himself until he thought he was able to walk. The plaintiff then proceeded to his office, printed some papers, and left the plant.
8. The plaintiff did not report this incident to defendant-employer on the day in question because he was in the midst of an evaluation period that would determine whether or not he would be dismissed from his job. The plaintiff had been told in the past, when he had medical time off, that he needed to have no further medical problems, or this could effect his employment.
9. The plaintiff spent the weekend of 4 October and 5 October 1997 in bed experiencing pain as the result of his injury.
10. On 6 October 1997, the plaintiff again reported to defendant-employer's plant for the purpose of continuing the meeting regarding his potential dismissal. Again, the plaintiff did not report the injury of 3 October 1997 during this meeting because he was afraid that this would be used against him and cost him his job.
11. Subsequent to the 6 October 1997 meeting, the plaintiff was terminated. It was at that point, on the afternoon of 6 October 1997, that the plaintiff reported his injury to defendant-employer.
12. The plaintiff's testimony regarding the circumstances of his injury and his reasons for not immediately informing defendant-employer of its occurrence is accepted as credible by the Full Commission.
13. Prior to his work-related injury, the plaintiff had experienced occasional low back pain. On 18 February 1997, Dr. James Harvell, an orthopaedic surgeon, examined the plaintiff and ordered radiographs that revealed degenerative changes at the L5-S1 level and to a lesser extent at L3-L4 and L4-L5 levels. No evidence was noted of a herniated disc, or nucleus pulposus or spinal stenosis. A myleogram and CT scan ordered by Dr. Harvell revealed no abnormality. The plaintiff underwent a period of physical therapy and Dr. Harvell opined that his condition would be resolved within approximately two months.
14. Subsequent to the incident on 7 October 1997, the plaintiff was examined by Dr. Jack Koontz whose medical records indicate that the plaintiff had slipped down the steps the previous Friday, 3 October 1997.
15. The plaintiff was then referred to an examination by Dr. Ira Hardy who ordered a MRI and CT Scan. The CT scan results revealed a mild right lateral bulge below the level of the nerve root exit. Conservative treatment and physical therapy were ordered for the plaintiff's back.
16. While the plaintiff was being treated by Dr. Ira Hardy, he was also seeking treatment from his family physician, Dr. Laddie Crisp. In November 1997, because the plaintiff's condition was not improving, Dr. Crisp referred the plaintiff back to Dr. Harvell. A CT myleogram ordered by Dr. Harvell on 24 November 1997 revealed a small foraminal disc protrusion on the right at L3-L4, and on the left at L4-L5.
17. The plaintiff was also referred by Dr. Crisp to Dr. James Fulghum, who examined the plaintiff in January 1998 and diagnosed him with a herniated disk at the L3-L4 level. Dr. Fulghum initially treated the plaintiff with epidural steroid injections. When this conservative approach was not successful, Dr. Fulghum recommended surgery.
18. Doctor Fulghum opined that the injury for which he treated the plaintiff and recommended surgery was the direct result of the fall that the plaintiff had experienced at work on 3 October 1997.
19. The plaintiff underwent surgery for this condition by Dr. Fulghum in the spring of 1998. During this procedure, Dr. Fulghum noted that the plaintiff had a deeply impacted L4 nerve root that was enclosed by bone and a disk bulge. Additionally, Dr. Fulghum noted that the plaintiff had a trefoiled lamina that, in combination with foraminal closure, created tremendous nerve root pressure. The trefoiled lamina was located at the L3-L4 level on the right side.
20. Initially after the surgery, the plaintiff experienced good results. However, by the summer of 1998, his condition had worsened and he was complaining of ongoing pain, weakness, and the inability to move about. As a result, Dr. Fulghum referred the plaintiff to Carolina Pain Associates in July of 1998 for an evaluation. This referral was medically reasonable and necessary in light of the plaintiff's continued pain.
21. The plaintiff was examined at the pain clinic and diagnosed with failed back surgery syndrome along with chronic right side low back and right leg pain as a result of slipping at work.
22. The plaintiff was then referred to Dr. Keith Kittleberger for the possible implantation of a spinal cord stimulator. At this time, the plaintiff was experiencing severe lower back and right leg pain, which were related to the incident on 3 October 1997, and which pain continued despite the back surgery performed by Dr. Fulghum. Following his examination, Dr. Kittleberger recommended that the spinal cord stimulator be implanted in order to attempt to control the plaintiff's pain and to relieve his symptoms.
23. The installation and use of the spinal cord stimulator was a reasonably necessary medical procedure in order to attempt to control the plaintiff's pain and to relieve his symptoms as the result of the work-related incident of 3 October 1997.
24. Initially, the spinal stimulator was inserted for a trial period with good results. As a result, a permanent stimulator was then implanted by Doctor Fulghum. Subsequently, it became necessary to adjust the stimulator and the adjustment was performed by Dr. Kittleberger. These procedures associated with the spinal stimulator were reasonably necessary in order to attempt to control the plaintiff's pain and to relieve his symptoms as the result of the work-related incident of 3 October 1997.
25. During the period when the plaintiff's ongoing pain was being addressed, he was also receiving treatment by Dr. Winston Lane, a Board Certificated Psychiatrist in Greenville, North Carolina. The plaintiff had previously sought treatment from Dr. Lane from July 1995 through April of 1997 for various incidents that had resolved through therapy and medications, including Zoloft. The plaintiff had been diagnosed with depression, but prior to his termination in October 1997, this condition remained controlled.
26. Upon examining the plaintiff subsequent to his termination by defendant-employer, Dr. Lane diagnosed him as having an adjustment disorder, and prescribed additional medication. This medication was Ativan, and was largely used to assist the plaintiff with his associated sleeping problems.
27. In December 1997, the plaintiff was still experiencing ongoing back pain and was taking large dosages of Percodan. At that time, Dr. Lane increased the plaintiff's Zoloft dosage to 150 milligrams per day in a further effort to improve his depression. Dr. Lane continued to treat the plaintiff throughout 1998 and into 1999 for continued depression and adjustment disorder related to his back pain, surgeries and other matters associated therewith. The plaintiff continues to require treatment for this depression.
28. In January 1999, Dr. Lane referred the plaintiff to a therapist to assist him in adjusting to his physical limitations resulting from his back injury and surgeries. At the time of the hearing before the Deputy Commissioner, the plaintiff continued to receive therapy treatments for his chronic back pain and will require additional treatment.
29. On 3 October 1997, the plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident. The plaintiff has required medical treatment since that time causally related to the compensable incident.
30. The recurrence of the plaintiff's depression, his adjustment disorder and chronic pain disorder are directly related to his 3 October 1997 injury by accident and related treatment and surgical procedures.
31. The plaintiff has not reached maximum medical improvement and has not been released to return to work by his physicians.
32. As the result of his 3 October 1997 injury by accident, related surgical procedures, his depression, adjustment disorder and chronic pain, the plaintiff has been unable to earn wages in his former position with defendant-employer or in any other employment since 4 October 1997.
33. The plaintiff's average weekly wage on 3 October 1997 was $740.56, yielding a compensation rate of $493.95.
34. Following the remand from the Court of Appeals, the Industrial Commission weighed, pondered, considered, and evaluated the medical evidence and testimony of Drs. Hardy, Koontz, Crisp, Harvell, Fulghum, Kittleberger, and Lane.
35. The Commission gives more weight to the testimony and opinions of Drs. Kittleburger, Lane, and Fulghum than it does to those of Dr. Hardy.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff's average weekly wage on 3 October 1997 was $740.56, yielding a compensation rate of $493.95. G.S. § 97-2(5).
2. On 3 October 1997, the plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
3. As a direct and proximate result of his 3 October 1997 injury by accident, the plaintiff sustained a spinal defect at the L3-L4 level that required surgical intervention and treatment for chronic pain. G.S. § 97-2(6). Additionally, as a direct and proximate result of his 3 October 1997 injury by accident, the plaintiff sustained psychological problems including anxiety, depression and an adjustment disorder. Id.
4. As a result of his 3 October 1997 injury by accident, the plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $493.95 per week for the period of 4 October 1997 through the present and continuing until such time as he returns to work or until further order of the Commission. G.S. § 97-29.
5. As a result of his 3 October 1997 injury by accident the plaintiff is entitled to have defendants pay for all related medical expenses incurred, including expenses related his psychological treatment. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to the plaintiff temporary total disability compensation at the rate of $493.95 per week for the period of 4 October 1997 through the present and continuing until such time as he returns to work or until further order of the Commission. From the amounts having accrued, this shall be paid to the plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all medical expenses incurred by the plaintiff as the result of his 3 October 1997 injury by accident, including expenses related his psychological treatment.
3. A reasonable attorney's fee of twenty-five percent (25%) of the Compensation that the plaintiff has been awarded is hereby approved for counsel for the plaintiff. From the compensation that has accrued, this fee shall be deducted from the amount due the plaintiff and paid directly to counsel for the plaintiff, with counsel for the plaintiff receiving every fourth check thereafter.
4. Defendants shall pay all costs of this action.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER